Good morning. May it please the Court, my name is Joy Bertrand and I represent Mr. Kimm. In terms of time, I would like to, with the opening argument, use seven minutes and then reserve eight minutes for rebuttal. I'll be keeping an eye on the clock as well. This case is about the private use of a public agency for personal gain, and the record has seen develop four broad legal issues. The first being the county's Monell liability, the second being the prosecutor's claims of immunity, third, the investigator's immunity claims, and then lastly, Evan's lack of probable cause. With regard to the Monell liability, there are two issues that have presented here, and they developed at the Rule 12 stage and then again, in a greater sense, in the record before this Court. First is whether or not Mr. Kimm pled adequately a pattern and practice or policy of the county. And here, taking all the facts as true in his amended complaint, we have at paragraphs 88 and 89, and 99 to 101, specific references to both the policymaking powers of an elected county attorney and the pattern and practice that evolved in this case. Is there any evidence of anyone other than Kimm that was actually prosecuted consistent with this alleged pattern or practice? Sir, there is nothing in the record that indicates that anyone else has been singled out for the treatment that Mr. Kimm received. Where a pattern develops is contrary to some of the other cases that have said when it's a one-time thing, you don't have a pattern. Here, it happened twice, and it happened after state court judges were saying, you, La Paz County, you have a real problem ethically with this case. So... Well, wait, when did a state court judge first say that? Because I understood the first time the charges were filed, and then when the conflict of interest was brought to the prosecutor's attention, he agreed and he dropped it. Only the second time in 2013 did I understand that the district court actually weighed in. In the first prosecution, in the discussion at that hearing regarding the La Paz County's conflicts of interest with this case, the court turns to the state and says, can we agree you've got a conflict here? And then they go on to discuss whether or not the option is you send this case out to another agency or you allow it to be dismissed without prejudice. And Mr. Brannon basically acquiesces and says dismiss without prejudice. So the flag to this county is raised in that first prosecution. Let me ask you a slightly different question. Let's assume that Mr. Kim did state a Monell claim either because there was a pattern on the part of La Paz County or because the prosecutor was a county agent and a policymaking county agent. So let's assume that for a moment. I was just a little puzzled because the court had already determined that there wasn't a genuine issue material fact as to probable cause in the summary judgment versus Evans. And assuming that we agreed that the district court didn't err in reaching that conclusion, doesn't that mean that there's no place to go with that Monell claim? Because the Monell claim, as I read it, was solely on a malicious prosecution issue. And if there's probable cause, as the district court found, then there's no malicious prosecution claim. What do we do with that? Your Honor, I would respectfully disagree with the premise that the trial court was correct in that probable cause. Well, let's say for a moment that we disagree with you and we think that there was a genuine issue of material fact as to probable cause to bring the prosecution. So doesn't that eliminate the Monell claim or basically make it, nullify it? No, Your Honor. First, Evans isn't covered by the Monell liability. Right, but it's the same malicious prosecution argument. I mean, it's all about the malicious prosecution of your client, based on the claim that he had tendered a forged contract and then lied about it. And the district court said there's no genuine issue of material fact that there was probable cause to bring this prosecution. Then how can the county then be liable on a Monell basis for malicious prosecution, even assuming Mr. Kim properly stated a Monell claim, if there's no genuine issue of material fact as to probable cause? Judge, the county prosecutors still allowed and brought twice a prosecution where they had clear conflicts of interest, where every State court judge who looked at this case said it was brought for improper reasons to be vexatious. But can we find a malicious prosecution claim if there is probable cause? I thought lack of probable cause was a necessary element. Your Honor, I think that the other State court findings tell us that they did not have probable cause, that the State cannot rely on that defense, and the State has never or the county has never asserted that argument. So it has not been developed either before the trial. Well, but let me point you to the summary judgment decision by the district court. This is at EOR 29. He seems to address this issue. The district court says Kim can overcome such a presumption about lack of probable cause by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith. But he has failed to do so here. So I think this is similar to what Judge Okuda is asking you, which is where the district courts made this finding in context of Evan's summary judgment motion, it seems to foreclose your argument for Monell liability. Your Honor, I disagree. You disagree with the district court's conclusion, or you disagree that even in light of the district court's conclusion that that forecloses your liability, or the county's liability? Both. But in terms of the question that the Court's asking regarding is the county's liability foreclosed, no, because the county had an independent obligation to investigate this case, to confirm that what Evans was saying was accurate. But the county's, per your theory, the county's liability is due to the prosecutors having brought the case. And Evans, I'm not sure why there would be any 1983 action against Evans since he's not a State, he's not acting under color of State law. But assuming that that was appropriate, the argument about Evans is also that he induced the prosecutors to take the action. So it seems like it's the same issue in both the summary judgment in favor of Evans and for the Monell claim, the prosecutors did something that they shouldn't have done. I mean, that's the only source of liability in both cases. And the district court said that that claim fails as a matter of law. Well, I disagree that that claim fails as a matter of law, because there are discrete factual disputes regarding Evans' lack of probable cause. And I'm going over my time, but I'd like to address this and make it clear, and then I'll come back after the appellees speak with the Court. Here, there are very clear facts that create a dispute regarding Evans' probable cause. So in the record, we have Kim under oath saying, Evans signed these contracts, I saw him sign them. We have in the record, Evans cashed the checks. So there's no question as to whether or not Evans got the money from Kim. And they continued doing business for several years. And we have Evans stating in his deposition testimony with me. But the question is not whether he forged the contracts or not. The question is whether the prosecutors were reasonable in saying, we've got two experts telling us that the contracts are forged, and so do we have probable cause to go forward with the criminal prosecution. And it's pretty hard to say when you have two experts telling you that the contracts are forged that you don't have probable cause. The experts did not find forgery. They found tracings, and they never confirmed that they were looking at the originals tendered by Mr. Kim. They never confirmed that Mr. Kim did anything. These documents were taken by Evans initially and sent out, and then sent out via the prosecutor taking them out of evidence and driving them to Phoenix. Do you want to save some time for rebuttal? I would, ma'am. Thank you. All right. May it please the court. My name is Mark Mazda from Irvine, California, and I represent EPLE Rayburn Evans. This appeal arises from the granting of two summary judgments, one for Mr. Evans and one for the county defendants. And the summary judgments were based upon undisputed facts. Two expert document examiners confirmed that signatures on four contracts that Mr. Kim alleged in a verified complaint in Arizona State Court were true and correct contracts between him and Mr. Evans were genuine. And then Mr. Kim testified under penalty of perjury in a deposition that he physically witnessed Mr. Evans sign those four contracts. Now, there was an original contract, not those four, that undisputedly was signed by Mr. Evans and Mr. Kim. At the end of that deposition, oh, and by the way, Mr. Kim also testified in deposition that the terms of the four contracts that were forged were better for him, better for Mr. Evans and Mr. Kim. Now, Mr. Evans testified under penalty of perjury in that contract that undisputedly was signed. But could I just ask you a threshold question? Yes. I was trying to figure out why Mr. Evans was the defendant in a 1983 action. Was he a State official at any time of these relevant events? He was a State official from 1983 to December 31, 1988. That was so it was 16 years had elapsed. So why is a 1980, why is he an appropriate defendant for a 1983 action? Were there extraordinary circumstances that would make him appropriate? No. Okay. No, not at all. Was that issue raised below? Because the district court didn't seem to go through quite a bit of analysis that seemingly could have been short-circuited. Well, there was allegations in the various complaints filed by Mr. Kim that Mr. Evans was acting under color of State law. And because the proceedings below arose in the context of a summary judgment motion, I didn't focus on that because I didn't want material issues of fact and dispute, that kind of thing. So that wasn't a part of the motion. But what was part of the motion was that the facts that are undisputed come from the deposition testimony of Mr. Kim, that he saw Mr. Evans sign these four contracts in his own personal vision, and that the terms of them are more favorable than the actual contract that was signed by the parties. And Ms. Bertram argued that, you know, there's no way to know how the contracts got, the four in question, got to the first document examiner. Well, there is a way to know, and there's evidence below. And that's the declaration of Steve Suskin on Eppeli Evans' excerpts of record at page 44, paragraph 7. It says, At the deposition of Kim in the underlying civil action, I arranged for Kim's attorney to provide directly to Sandra Ramsey Lines, a forensic document examiner who is an expert witness, who I had retained for Evans, the originals, the originals of exhibits A, B, C, D, and E. So that's all five contracts. A was the one that undisputedly was signed by both parties, and then B through E were the four. So when she says there's no evidence of how they got there, there is evidence. And how did they get there? Kim's own attorney arranged. A different counsel, though. A different counsel. Not Ms. Bertram, but Kim's own attorney in the underlying civil Arizona state law case forwarded them to Ms. Lines. So there is no chain of custody issue. The evidence on this is that it went directly to the expert. The expert determined that those four signatures were inauthentic, inauthentic. And then after that happened, that is when Mr. Susskind, Mr. Evans' lawyer in the underlying state law case in Arizona, that is when he forwarded it to the La Paz County officials and said, here's Sandra Lines' report, this is what's going on, here's the deposition, and when he said he witnessed it under oath, here's the verified complaint where he verified under oath that these were all original signatures. And so based on that, and based upon Rayburn Evans' knowledge that he didn't sign these, that these were different terms than the contract that he did sign, he had probable cause to believe that Mr. Kim had committed forgery and perjury. And so he made that referral. And based upon that, and there's no facts in the record that dispute any of that. It's all undisputed. Based upon that, there's probable – there was probable cause for him to do so. And because there was probable cause for him to do so, counts 1 through 6 of Evans' complaint against Mr. – I'm sorry, Kim's complaint against Mr. Evans all fall away, and the district court was correct in granting summary judgment on that. They also make some RICO claims. Yes. And they argue that there was a genuine issue of material effect as to the RICO claims. And they list certain – in their briefing, they list predicate criminal actions. What's your response to that? There's no evidence of that. There's no evidence at all of any racketeering or abuse of process predicates. It's established that in order to make those claims, Mr. Kim would have to put forward some evidence of an act or a threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter or dealing in a controlled substance or listed chemical or similar type acts. There's no evidence that Mr. Evans engaged in any of that. There was no evidence submitted by Mr. Kim below before the district court. And there's certainly no evidence that she – that Mr. Kim points to in the briefing before this Court. It's a hope and a prayer. It's an argument. It's a naked argument unsupported by actual evidence. What happened in this case is that Mr. Kim thought he had a civil claim against Mr. Evans. That's fine. He thought he was owed money. That's fine, too. He filed a lawsuit. That's fine. Where Mr. Kim went wrong is he created and fabricated evidence in support of his lawsuit, and then he verified a complaint that attached that false and fabricated evidence, and then he lied about it under oath in a deposition. We're not really looking at the underlying facts, right? The issue before us is whether there was enough – there's a general issue of material fact, whether the prosecutors had probable cause to bring the criminal action. That is correct. That's all we're looking at, right? That's correct. And based on the undisputed facts, Mr. Evans had such probable cause. And as an initiator, even if he had an ulterior motive under the case law cited in the briefing, even if he had that ulterior motive, he was – as an initiator of that criminal proceeding, he's protected. And so with that, I'm a little over my time because I have a co-counsel who is going to argue for the La Paz County defendants. But the one case I wanted to refer to is the Walsh case, the Arizona Supreme Court case, in which initiators are insulated further if at the time of the initiation they have a reasonable belief in the guilt of the plaintiff and leave it to others to prosecute. Mr. Evans certainly had such a reasonable belief, and Mr. Evans did not engage in any prosecution on his own. So that's a further basis for this Court to affirm the district court summary judgment. Thank you, Your Honors. All right. Good morning, Your Honors. Mike Borzynski on behalf of Defendants Brannon, Viederman, Jones, and La Paz County.  further relative to this if there's probable cause. You don't have to rely on any of the attorneys here. Rather, in the records that were submitted to you, namely, I'm using appellant's convention, docket 135-11 at page 13 through 19, Mr. Sunstead, who was the defense counsel in both the first and second prosecutions, this is during the second prosecution on May 13, 2017, they're in the criminal court to argue, among other things, a motion to remand. And Mr. Sunstead states, quote, but after being asked by the judge, well, should we decide the remand motion first, because that may take care of all our problems. Mr. Sunstead's answer is, quote, but after reviewing the transcript, and he's referencing the second grand jury transcript, it appears that all the necessary steps and procedures were followed. And there was absolutely no basis for a motion for new finding of probable cause. That ship sailed in 2017, Your Honors. They conceded it at the criminal trial. The district court found the same thing here. There's no absence of probable cause. The only question becomes, as Judge Nelson pointed out, whether the very narrow exception for outright provable fraud applies here. And other than merely saying as much, plaintiffs have provided no evidence. Well, what do we do about the fact that the district court dismissed the complaint against the county in a motion to dismiss, as opposed to on summary judgment? And so we're actually looking at the allegations and the pleading to see if there's enough to plead a cause of action. I mean, now we know, because the district court has ruled in Evans' summary judgment motion, that there's no genuine issue of material fact about the presence of probable cause, but aren't we turning back the clock to look at the district court's ruling on the complaint, just on the allegations of the complaint? Your Honor, in a manner, yes. And so I'm going to put the cart before the horse a little bit. It would be an alternative basis, if you will, to uphold the Court's decisions. But more responsive or directly, in the context of the motion to dismiss, the Court found that there was a lack of evidence, factual evidence, pled to support the claim at its outset. I'm just going to draw my line. The Court acknowledged that, one, contrary to what appellants argued in their briefs, that the La Paz County defendants, in fact, did raise the failure to plead sufficient information in order to move forward on that Monell claim. And the Court found as much, that there was no, in the Court, actually, in terms of where it comes up in the record, was the, made its determination at page 16, lines 2 through 7, that there was no allegation of a formal policy or an allegation of a pattern of similar behavior on the part of the prosecutors. That ended the Monell claim, and not speciously or unusually because we had a ruling and it was dismissed. It wasn't raised in our motion for summary judgment. In fact, we laid that out in some particulars because of the length of the case to allow the judge to remember what had been said. So what if we disagree with that ruling? I think there's an argument that because the prosecutor is assuming it's a county agent and a policymaker for the county, even a single action could be a policy action for purposes of Monell liability. I have two responses to that. First off, that argument, interestingly enough, while appellants accuse LaPaz County defendants and or the Court of not raising these things during the trial, the plaintiffs actually didn't raise the argument concerning the ultimate authority, decision-maker authority, after they raised it in their complaint. They never argued it in defense of the motion to dismiss. They didn't argue it in terms of either of the, and they wouldn't have with co-defendant's brief or motion for summary judgment, but they didn't argue it in ours. In fact, they didn't argue it in their opening brief. They didn't argue it until their reply brief. That aside, if you find that you want to visit that issue, then I would direct you to those cases we cited that talk about how State prosecutors in Arizona, when they're acting for the State, not of the county. Even appellants agree that that decision on your part rests primarily on Arizona law. I cited to you a supplemental authority, a case as recent as just a couple months ago, that again, while a hotly disputed and very important case in Arizona criminal circles, the one thing that the majority absolutely agreed on was that a prosecutor prosecuting  Plaintiffs have never, ever said what did they do other than prosecute this case that would constitute some sort of administrative or other activity for which prosecutors can be held liable. I should take that back a little bit. They intimated in their complaint there was other information, namely defamation, extrajudicial defamation, if you will. But when push came to shove and they were asked to prove that up, they had nothing. So that's why the defamation case had to wait until the summary judgment phase. Excuse me. The bottom line is, Your Honor, under Arizona statutory law 11-532-A1 and under three or four direct cases under Arizona law, undisputed, uncontested, not talked about in any other Arizona case, prosecutors are always, when they're prosecuting cases, always agents of the State, not of the county. Plaintiffs have never had a response to that other than echoing the same statutes and not really arguing to the contrary. Those are the points I have, unless anybody has any other questions. No questions. Thank you. Made it under the red light. Good job. Thank you. Regarding the 12-B finding, regarding a lack of pattern, it's my understanding of the State or the county never pled that in their 12-B papers. The trial court made that conclusion on its own, so we didn't have an opportunity to argue it. We raised it here. We brought it up here. If the court is inclined, one option may be because of the Rule 12 versus Rule 56 distinction, to remand the matter for fact-finding regarding the probable cause. Isn't that sort of a futile act, since the district court has already ruled? That's what I was puzzling. The district court. Ma'am, I didn't hear you. I'm sorry. The district court already ruled on that, on the court question, which is, is there a genuine issue of material fact that there was probable cause? And the court said, no, there was probable cause for bringing the prosecution. It's already ruled in this case on these very facts. And so remanding it seems like a futile act, because the opposing counsel will bring a summary judgment motion referencing the ruling in Evan's case, and that's it. So why wouldn't that just be futile? I don't think it would be futile, Judge, because here it would go to the knowledge and what the prosecutors did. Prosecutors' offices do not simply bring every case that a citizen calls up and says, I think a crime was committed. They have an obligation to conduct an independent investigation to ensure that they stay independent from the investigation. And here, what underscores their lack of probable cause, what underscores Evans' lack of probable cause, that if you accept Mr. Kim's statements as true, which we have to do either at the 12B or the Rule 56 stage, then Evans knew. He signed those contracts. He owed the money. That is a clear, factual determination. What does that have to do with probable cause? It has to do with probable cause, because if Evans knew that he signed the contracts, which is the crux of all of this, then he knew those contracts weren't forged. So how does the ---- I guess I'm not following you. So the prosecutors had evidence. I mean, we're talking now about Monell liability. The prosecutors had evidence that the contracts were forged or were manipulated. They weren't signed by Mr. Evans. And Mr. Kim argues that they were legitimate. So there's a dispute over whether the contracts are legitimate or not. That doesn't have too much bearing on whether the prosecutors had probable cause to bring the prosecution. Obviously, they disbelieved Mr. Kim, and they had two expert reports to rely on. So the only issue is whether that was enough for probable cause, and the district court said it was. So why does it make any difference whether it's the prosecutors with a view towards Monell liability or the prosecutors with a view towards Evans liability? I'm not understanding. It makes a difference because all of that prosecution was based only on the genesis being Evans and his prompting of this investigation, and they're doing no outside investigation. They're keeping it in-house. They did not develop probable cause. I wanted to answer one question, Judge Okuda, that you had regarding how Evans got pulled into the 1983 litigation. The plaintiff pled a conspiracy to violate civil rights, and private parties can be brought in under that conspiracy. The trial court found in early 12B pleading determinations that Evans was properly pled as a conspirator. So that's how that got answered. It's irrelevant, but I was curious. I'm happy to answer what I can. I have 10 seconds. Does the court have any other questions for me? Well, I guess I have a question, and I might want to try to take you over your permits that. Could you revisit the issue of why you feel there can be a Monell violation, even if there was probable cause, to prosecute? Yes, sir. Because they continued prosecuting after they were told, you don't have probable cause. They continued to press forward after judges were saying this has to stop. And while defense counsel for Mr. Kim in his criminal case may have had some commentary on the record, the fact is courts, Arizona state courts who have looked at this said this was a bogus prosecution from the outset brought only to benefit Evans. That is how we get to Monell liability, even if they had probable cause when they went to that first grand jury. The other thing we know is that they created that probable cause in part by Haas's less than honest testimony before both grand juries. And how is the county liable under Monell if the prosecutors are acting as arms of the state in prosecuting? Versus as county actors, Your Honor. I just want to make sure I understand your question. Right, right. Well, they're not operating as arms of the state, as discussed in our briefing both before the trial court and before this court. The Arizona law, much like Goldstein versus Los Angeles, we look to the state law controlling county's attorneys. It's very clear the state cannot get involved in directing criminal prosecutions unless they get specific permission from the governor. The attorney general cannot tell counties what to do. So, for example, in Arizona, we just had a lot of litigation about marijuana, and it's how we're going to prosecute medical marijuana cases. There was a split in the counties. Some counties were prosecuting it with the resin from the edibles. Some were not. So if the governor gives approval, then the attorney general can direct their activities. The attorney general can prosecute the case. They can't tell the county attorney what to do. I think that's an important distinction. Okay. Your Honor, do you have anything else? I want to make sure that our conversation is complete. No, thank you. You've answered my questions, and I appreciate it. Okay. Thank you, Your Honor. We appreciate your argument. Thank you. The case of Jack Kim versus Martin Brannon et al. is submitted.
judges: Gould, Ikuta, Nelson